McClure *v.* Whitney.

[82 South. 259, Division B. No. 20697.]

1. Colleges and Universities. *Public officers. Removal. Office.*
    A person elected secretary treasurer, and business manager of Alcorn Agricultural and Mechanical College by the board of trustees, pursuant to section 12, Code 1906, is not a "public officer" of the state within the Constitution of 1890, section 175, providing the exclusive method of removing a public officer, but is a mere employee of the board of trustees.

2. Same.
    The essential distinction between an employment and an office is that in an office the duties and powers are prescribed by law, while in the case of a mere employee the duties and powers and compensations are fixed by the appointing boards.

Appeal from the circuit court of Alcorn county.
Hon. R. E. Jackson, Judge.
Proceeding in *quo warranto* by James McClure against P. D. Whitney. Petition dismissed and plaintiff appeals.
The facts are fully stated in the opinion of the court.

*Powell & Mayes,* for appellant.

By the appointment of McClure in 1916 for a term of four years under the unbroken line of decisions of this state for sixty years, he then and thereby became a public officer. In the case of *Monette* v. *State,* 91 Miss., 670, Justice Mayes, in delivering the opinion of the court, says as follows: "We have no hesitancy in declaring that a policeman is an officer within the meaning of section 20 of the Constitution of the state of Mississippi, and must be appointed for some specified time. Any law or ordinance which provides for the appointment of such an officer during good behavior is in voilation of this section, and void. In the case of *Shelby* v. *Alcorn,* 36 Miss. 273, on page 289, 72 Am. Dec. 169, this court held that "a public officer is one who has some duty to perform concerning the public; and that he is not the less a public officer when his duty is confined to narrow limits because it is the duty and the nature of the duty which makes him a public officer and not the extent of his authority." *Shelby* v. *Alcorn,* 36 Miss. 273, 2 Am. Dec. 169; Kiersky 1. Kelly, 80 Miss., 803, 31 So. 901; *Johnson* v. *State,* 132 Ala., 43, 31 So. 493. The section of the constitution referred to above contemplates all persons who have any duty to perform concerning the public under any law of this state, whether it be under an act of the legislature, the constitution of the state, or a municipal ordinance. The ordinance in question not providing for a specified term of service for the policemen of the city, but authorizing the appointment during good behavior, is void."

In the case of *Yerger* v. *State,* 91 Miss., 815, which was a contest between rival claimants for the office of secretary of the penitentiary board, and the court said: "Under these authorities, the duty which Brown is to perform being a duty concerning the public, as contradistinguised from a private employment, and his office

being created by the statute, we do not think there can be any question as to his right to resort to the writ of *quo warranto* in this case, or that it cam be doubted that he is an officer, within the meaning of this section of the statute."

To the same effect is *Ware* v. *State, ex rel, Poole,* 111 Miss. 589; *State* v. *McDowell,* 111 Miss. 569; *State Board of Health* v. *Matthews,* 113 Miss. 510; *Lizano* v. *City of Pass Christian,* 96 Miss. 640.

We could cite numerous other authorities from other states to show that McClure was a public officer, but we feel that in the light of the above decisions, it would be reflecting upon the intelligence of this court to do so.

If McClure was a public officer then we contend that the proceedings of the board of trustees at their meeting in June, 1918, in attempting to remove McClure from office, and appoint Whitney in his stead, was absolutely void, for the reason that he could be removed only by indictment and conviction before a court of competent jurisdiction.

Section 175 of our constitution reads as follows: "All public officers, for wilful neglect of duty or misdemeanor in office, shall be liable to presentment or indictment by a grand jury, and upon conviction, shall be removed from office, and otherwise punished as may be prescribed by law."

In the case of the *State Board of Health* v. *Matthews,* 113 Miss. 526, Chief Justice Smith, in delivering the opinion of the court, says: "Section 175 of our constitution provides the exclusive method by which a public officer may be removed from office. *Runnells* v. *State,* Wal. 146; *Hyde* v. *State,* 52 Miss. 665; *Ex Parte Lehman,* 60 Miss. 967; *Lizano* v. *City of Pass Christian,* 96 Miss. 640, 50 So. 873, Ann. Cas. 1915A. 123. Consequently section 2490, Mississippi Code of 1906, insofar as it authorized the state board of Health to remove a county health officer, is void."

It is contended by our friends, the enemy, that Mc-Clure never was an officer, because he failed to take the oath, as required by section 268 of our constitution, which section is as follows: "All officers elected or appointed to any office in this state, except judges and members of the legislature, shall, before entering upon the duties thereof, take and subscribe to the following oath, etc."

It will be noted that this provision of the Constitution provides no penalty for the failure to take the oath of office, or to give bond. It will be noted here also that this section draws a distinction between elective and appointive offices. Our contention is that when McClure was appointed in August, 1917, he thereby became an officer, and that the directions of the constitution, in regard to taking an oath and giving bond, were simply directory. In the case of the *United States* v. *Benjamin F. Flanders,* reported in 112th United States Supreme Court reports, Lawyers' Edition, on page 631, which was a case in which a revenue agent was suing for his salary and prequisites which accrued between the time of his appointment, which was on March 4, 1863, and the time of his taking oath of office and giving bond, which was on May 15, 1863, it was contended that he had no right to his salary or perquisites, because he was not an officer during that time. To this contention the Supreme Court of the United States, though Justice Blatchford, says:

"His commission was dated March 4, 1863, and the Government permitted him to discharge the duties of his office and accepted his services from March 11, 1863. At that time, the Act of July 2, 1862, 12 Stat. at L. 502, was in force. It provided that every person appointed to any office of profit under the government, in any civil department of the public service, except the President, should, before entering upon the duties of such office, and before being entitled to the salary or

other emoluments thereof, take and subscribe an oath or affirmation, the form of which is given.' Section 4 of the Act of July 2, 1862, 12 Stat. at L., 433, provided that before any collector of internal revenue should enter upon the duties of his office, he should give a specified bond, with sureties.''

The court held in that case that this statute was directory, and that the revenue agent was entitled to his salary and fees from the time of his appointment, up to and including the time of his taking the oath and giving bond.

Referring to this act of Congress mentioned above, the supreme court of the United States, in the case of the *United States* v. *Eaton,* 169 U. S. Reports, on the bottom of page 772. Lawyers' Edition, says: "It is settled that statutory provisions of the chacter of those referred to are directory, and not mandatory.''

"It seems to be well settled by the authorities that unless the law, in terms, declares a forfeiture or failure to qualify within the prescribed time, the law, which merely fixes the time for the elected officer to qualify, will be deemed directory. The rule is thus stated in the 23 Am. & Eng. Ency. of Law, page 357: "Statute prescribing the time within which an official oath shall be taken, or bond given or filed, is generally held directory, and failure to comply therewith does not, *ipso facto,* forfeit the office, and if the officer subsequently, and before the commencement of the proceedings complies with the requirements of the statute, he is entitled to the office.''

The decisions of this court are in line with the decisions of other courts in holding similar laws directory. *Marshall* v. *Hamilton,* 41 Miss. 229; *State ex rel.* v. *Laizer,* 77 Miss. 146, 25 So. 153.

It will be noted that in this case, the constitutional provision in regard to taking the oath of office and giving bond, contains no penalty for failure to do so. It is

further contended by our friends, the enemy, that while the constitution, in section 268, does not provide a penalty of removal from office and vacating the same because of failure to take the oath of office and give bond, yet that the act of the legislature, putting section 268 into effect, to wit: Laws of 1908, page 199, which is amendatory to the Code of 1906, section 3459, does provide a penalty and vacates the office unless the oath is taken and bond given, as requird therein.

This section reads as follows: "If any person elected to any office shall fail to qualify as required by law, on or before the day of the commencement of his term of office, etc., a vacancy in such office shall occur thereby and, it shall be filled in the manner prescribed by law for the filling of such offices, etc."

It will be observed that this section, which is the only one either in the constitution or in the acts of the legislature which provides a penalty for failure to qualify by taking the oath and giving bond, does not designate appointive offices as subject to its penalty, but speaks only of persons elected to any office. The very title of the act shows that it refers only to elective offices. The title is as follows: "An act to amend section 2459 of the Code of 1906, so as to define more definitely what constitutes a vacancy in an elective office."

This act is highly penal, and must be strictly construed. It will be noted, as said before, that section 268 of the constitution distinquishes between and includes both elective and appointive offices, but provides no penalty for failure to observe its provisions; that this provision of the constitution is therefor, under the decisions cited, only directory. It will be further noted that the Laws of 1908, page 199, quoted above, while it does provide a penalty of vacation of office, applies only to elective offices, and not to appointive offices, the rule being that *expressio unius exclusion alterius.* The question then comes back to the proposition: Is the office of

secretary and treasurer of Alcorn College an appointive or elective office?

In Rapalje, etc., L. Dict, under the term "appointive," it is stated: "Appointment to an office or trust implies the conferring of the dignity by the act of one or more individuals having power to elect the person appointed. Election is the selection of the person by the voice of the entire class. No latitude of construction can justify the reading of electing as a synonym of appointing." *McGruder* v. *Swann*, 25 Md. 214; see, also, *State* v. *Erwin*, 5 Nev. 111; *Police Comrs.* v. *Louisville*, 3 Bush 672; *Speed* v. *Crawford*, 3 Met. (Ky.) 207; *State* v. *Barbour*, 53 Conn. 76, Am. Rep. 65; *Conger* v. *Gilmer*, 32 Cal. 75.

The fact that the selection of the officer is made by ballot is not controlling. This is but a means that the appointing body may adopt in making its choice of the individual to be appointed, nor does a direction to the appointing body to "elect" the one whom it will designate for the office require such selection to be made by ballot, or render its act any the less an "appointment." *Conger* v. *Gilmer*, 32 Cal. 75. We further contend that it was unnecessary for McClure to have given bond and taken the oath of office before the beginning of this proceedings.

In the case of the *State ex rel. Olum M. Bourgeois* v. *Edwin Laizer*, reported in 77 Miss. 140, our supreme court says: "It is unnecessary for a relator to have taken oath and executed bond, or to have offered to do so, on or before the beginning of the term, in order to maintain by *quo warranto* a contest for a municipal office, with one usurping the same."

The same rule, by a parity of reasoning, would apply to the case at bar. We further contend that the board of trustees, by accepting McClure's bond and receiving his services, and paying his salary for over a year, is estopped from denying his legal title to the office.

We further contend that no one but the state, in a direct proceeding, can question his title to the office. *Town of Sumrall* v. *Polk*, 79 So. 847.

And so we contend. First: That the board of trustees had the right to appoint McClure as secretary and treasurer and to fix his term of office, which was done; Second: That thereby he became a public officer; Third: That he could only be removed as provided by section 175 of the constitution and that the attempted action of the trustees in removing him was void; Fourth: That McClure, having given the bond, had the right to take the oath of office at any time until proceedings were had against him, under section 75 of the constitution, and that at this time, he has taken such oath; Fifth: That before taking the oath of office and giving bond, McClure had the right to bring a *quo warranto* proceedings; Sixth: That section 268 of the constitution of this state since it provides no penalty of removal, is simply directory; Seventh: That the Laws of 1908, page 199, which is amendatory to the Code of 1906, section 3459, only applies to elective offices, and that the office of secretary and treasurer is an appointive office.

The contention of the appellee in the sixth, seventh, and eighth grounds of his demurrer, that chapter 170 of the Laws of 1912, invalidated and annulled section twelve of the Code of 1906, are not sound, for the reason that the two statutes refer to entirely different matters. Section 12, Code of 1906, under the head of Agricultural and Mechanical College, is made to apply to Alcorn Agricultural and Mechanical College, by section 30 of the Code of 1906, which section (12) reads as follows: "Trustees—The Government of said college shall be in a board of twelve trustees, a majority of whom shall be practically agriculturists, mechanics and manufacturers, one to be appointed from each congressional district, and four from the state-at-large. They shall be appointed by the governor of the state, by and with the advice

and consent of the senate, and shall continue in office for six years, and until successors are appointed; and the trustees shall be ineligible to succeed themselves more than once. They shall elect a secretary and a treasurer, but these shall not be members of the board to trustees. In the absence of the president, they shall elect a president *pro tempore*. The duration of the term of the officers of the board of trustees shall be fixed by the board.''

This section applies to only two of the institutions of the state to-wit, the Agricultural & Mechanical College and Alcorn College. The secretary and treasurer of these institutions, as practically applied is the purchasing agent and local manager of these two colleges, and he keeps the accounts of the same, while on the other hand, the general secretary of the board simply checks up the local secretaries of the different colleges and makes his report to the general board. The court will see this by reference to chapter 170 of the Laws of 1912, section 2 which reads as follows: ''The board shall have authority to appoint one of their members as secretary of said board, who shall be a competent accountant, and whose duty it shall be to check up personally all the affairs and finances of each of the institutions at least twice a year, and for his services he may be paid a reasonable compensation to be fixed by the board of trustees.''

The court will observe from reading this last section that the general secretary is required only to check up the affairs and finances of each of these institutions twice a year. He is not required to keep the running accounts of any of the institutions, or to see to the expenditures or expenses of either of the colleges. The two offices are supplementary to each other and do not in any way conflict.

Chapter 170 of the Laws of 1912 does not mention section 12 of the Code of 1906. It is not antogonistic

to it, and was not intended to repeal it, since repeals are not favored by implication.

"The law does not favor the repeal of a statute by implication and the rule is, that when a repeal by implication is allowed, the extent of the repeal will be only so far as there is a plain and manifest repugnancy between the two statutes." *White* v. *Johnson,* 23 Miss. 68; *Ponds* v. *State,* 49 Miss. 1; *Swann* v. *Puck,* 40 Miss. 268; *Compbell* v. *New Orleans National Bank,* 74 Miss. 526; *Patterson* v. *Clinghan,* 73 Miss. 310.

The tenth and eleventh grounds of demurrer of appellee, that even if the board had the right to elect a secretary and treasurer of Alcorn College, it must elect two different persons, is without merit, since section 2 of the constitution of 1890 provides that one man can hold two offices provided they are in the same department of government. In this case, the office of secretary and treasurer is really but one office, with various duties attached to the same.

The thirteenth ground of demurrer, that the office of secretary and treasurer of Alcorn College involves no public duties, is also without merit, since the secretary and treasurer is engaged in keeping the accounts of a public institution whose accounts are paid by public funds.

The statement in said ground of demurrer that the secretary and treasurer of Alcorn College keeps the minutes of the general board of trustees, is not in accordance with the facts in the case, since he is not expected to keep the minutes of said general board, and was not employed for that purpose. The fourteenth, fifteenth, and sixteenth grounds of demurrer, we submit, do not need any reply.

For all these reasons, we believe that the judgment of the court below should be reversed, and judgment renderer here for the appellant.

*Truly & Truly,* for appellee.

The appellee contends: First: That the position of secretary and business manager is not a public office; second: That the position of secretary-treasurer (although we claim that this position is not here involved) is not a public office; third: That appellant is not a *de jure* holder of either position and therefore cannot maintain *quo warranto,* even if either of these positions were held to be public office. fourth: That a *de facto* officer cannot maintan an action of *quo warranto,* and that even if a *de facto* officer could be held to have that right, the appellant could not avail himself of it because he is not even a *de facto* officer. fifth: That even if the position involved (of the position claimed by appellant to be involved) is held to be a public office, and even if appellant be held to have the right to maintain the action of *quo warranto,* still his petition should be dismissed in this case because he was simply discharged in accordance with law and as provided by the terms of his employment or election.

Appellant is proceeding on the theory that he was elected to public office and that public office was established by section 12 of the Code of 1906. It must be remembered that although he claims to be holding office under the Code of 1906, still he was not elected to the position which he is claiming, until March 27, 1912, after chapter 114 of the laws of 1911 was enacted. He claims to be holder of a public office and yet the position which he claims is not mentioned in any statute. The position of secretary and business manager will not be found anywhere in the constitution or laws of this state by the most careful painstaking research. It does not, we submit, lie in the mouth of appellant to claim that this position is a public office unless he can cite the court to some statute creating the office. Recognizing this fact, and knowing this to be the law, appellant seeks to find

his authority, as above stated in section 12 of the Code of 1906. Our reply to this is that section 12 does not provide for any such position, whether office or not as secretary and business manager; and further, that section 12 has been repealed by chapter 114 of the Laws of 1910. If section 12 can be construed as creating a public office, it must be construed as creating two public offices, to-wit: the office of secretary, and the office of treasurer. The wording of the statute shows that it contemplates two different positions because it says that the holders of these shall not be members of the board. If this does not mean two different positions, we are unable to understand the English Language. Appellant claims that these two positions, or "offices" as he calls them, may be held by the same person. Our reply is that the law intended two different persons should hold them because the law very plainly said that, and further that the two positions are incompatible and antagonistic. One position is established to keep the books and the other to keep the money, exactly the same incosistency which will not allow one person to be treasurer and auditor. Our second answer to the proposition that McClure is holding an office established by section 12 of the Code of 1906, is that section 12 has been repealed by chapter 114 of the laws of 1910. It is true that the Laws of 1910 do not by name, specifically repeal section 12 of the Code, but it provides an entirely new and different plan for the management of Alcorn College. That we are not alone in our contention in this regard, we desire to call the attention of the court to Hemingway's Code. This code has never been officially adopted but it was carefully complied and is certainly respectable authority on a question as to statutes are now in force. We defy appellant to find the old section 12 of the Code of 1906 in Hemingway's Code. In addition to this it is impossible in our opinion to operate under both the Code of 1906 and the Laws of 1910;

and as the Laws of 1910 is the last expression of legislative intent, it follows that the former law must, of necessity stand, repealed.

We therefore conclude our argument on this point by saying that section 12 of the Code of 1906 has been repealed; that if not repealed, still it makes no mention of secretary and business Manager; and lastly, that as Mr. McClure was elected to this position first in 1912, after the Laws of 1910 were in force, he must be held to the scheme of management then in force.

As to our second proposition, that is, that the position of secretary-treasurer. (the one claimed in the pleadings and brief of appellant to be position in question) is not a public office, we reaffirm everything heretofore said about the position of secretary and business manager and apply the same arguments to this second contention. In addition to what we have heretofore said, we may add, that if the court were to adopt the view that secretary and treasurer, notwithstanding the language of the statute, could be held by one person and that this constituted a public office, then we contend that section 12 of the Code of 1906 is unconstitutional because it is in direct conflict with section 103 of the Constitution. There is no possible way, in our humble opinion, to hold section 12. Constitutional if the court were to also hold that this section really established a public office. Section 103 of the Constitution provides that the legislature "shall" fix the powers and provide the compensation for all officers. Section 12 of the Code of 1906 does neither, and the only way it can be held to be constitutional is on the theory that it did not create a public office. It cannot be successfully contended, we submit, that the bare mention of the name of a position in the statutes of this state create that position a public office. This is merely one of the marks. There must of necessity be something more than this. There must, among other things, be public duties. To hold

that the mere mention of a position in the Code thereby created it a public office, would lead to very ridiculous lengths. The appellant in this case had no public duties to perform. Appellant claims that inasmuch as he kept the accounts of a public institution, which accounts were paid by public funds, he thereby took on public duties and so became a public officer. This argument, in our opinion, is unsound and cannot be sustained. This same argument would apply with equal force to the lowest book-keeper in the employ of the state treasurer, the state auditor, or any other state official. Public duties, as we understand the meaning of the term, means coming into contact with the public officially. The mere fact that a man may handle something that belongs to the state, does not, and of necessity cannot, alone make him a public officer. To hold this would be to hold that any porter in the state capitol is a public officer because he handles a mop or a broom that belongs to the state, or that because he sweeps a public floor he becomes, *ipso facto*, a public officer. For these reasons we contend that the position of secretary and treasurer or secretary-treasurer is not a public office because it has no public duties and for the further reason that section 12 of the Code of 1906, is unconstitutional if it undertakes to establish a public office, and that, if wrong in this, section 12 has been repealed.

*W. C. Martin*, for appellees.

It is a clear proposition in this case that appellant must, as always, recover upon the strength of his own title and not the real or supposed weakness of that of his adversary, and that, in order to maintain his suit, he must establish the following propositions: first, that by his election in 1916 he became the incumbent of a public office; second, that such office was within the meaning and protection of section 175 of the Constitution of 1890, as the same has been interpreted by this court in several

cases. If appellant fails in either of these pre-requisites to success he cannot gain his cause.

At this point, mention may be made of the two contentions of appellant on page 6 of his brief, i. e., that the board of trustees is estopped by the facts from denying the legal title of McClure, and that no one but the state can question the title of McClure—citing for last proposition the case of *Town of Sumrall* v. *Polk,* 79 So. 847.

Counsel cite no authority for the contention as to estoppel, and we think it would be impossible to find any to sustain the proposition. A man cannot well become the *de jure* holder of a public office by estoppel. And in this case Mr. McClure must be a *de jure* officer to sustain himself, for he is the plaintiff and invokes the writ of *quo warranto.* Moreover, this is not a suit between McClure and the board of trustees, and no, principle of estoppel could apply here against Whitney.

Equally unsubstantial do we consider the contention that no one but the state can question the title of McClure, and therefore Whitney cannot. This would be true in some forms of proceedings but not in the instant one, where McClure is proceeding upon the strength of his title solely. The law on the point, as we conceive it, is that third parties cannot question the validity of the acts of persons claiming to be officers, when those persons are in by color of title, even though they may be *de facto* merely and *de jure* officers. We fail to see the bearing of this principle upon the case in hand. McClure, by his original and amended petitions, shows that he has been ousted, and he seeks to regain possession of his office upon a strict claim of legal right—in such a proceeding it appears to us that the principle invoked by counsel has no application whatever.

We contend for the appellee, first, that the position, office, employment, or whatever you please to term it,

to which Mr. McClure was elected by the board of
trustees in 1916, was not that of secretary-treasurer at
all, and Second that such position was in no sense a
public office with tenure protected by section 175 of the
Constitution, but a mere employment which the trustees
were free to terminate at any time they saw fit, without
inflicting any legal injury upon him, or at least without
giving him the right to proceed by *quo warranto.*

Counsel for appellee contend that section 12, chapter
3 of Code of 1906, created the offices of secretary and
treasurer of Alcorn College; that, so far as those offices
are concerned said section 12 has not been repealed,
either in terms or by necessary implication, by chapter
114 of the Laws of 1910 that those positions were public
offices from which an incumbent could be removed only
under section 175 of the Constitution; that Mr. McClure
was elected to both of those offices in 1916, and, the
board having fixed the term at four years, he could not
be removed by the board during the term.

Section 12, chapter 3, Code of 1906, provides for the
government of Alcorn Agricultural and Mechanical Col-
lege as well as for that of the argicultural and me-
chanical college.  By that section the affairs of the
college were placed in the hands of twelve trustees, and
those officers were commanded to elect a secretary and a
treasurer, who should not be members of the board; the
duration of the terms of the officers of the board of
trustees was to be fixed by the board.

If the two positions to be filled by the board of
trustees, as commanded by said section 12 are to be
treated as public offices, we suggest to the court that
that portion of section 12 in which the election of a
secretary and treasurer was enjoined was itself void
as being in violation of section 103 of the constitution.
Note that the section neither provided for the com-
pensation of said officers nor prescribed their duties,
nor did the act of which this section is a part any-

where enjoin upon the trustees to do these two things. Now, section 103 of the Constitution, which is a section dealing with public officers just as much as the section 175 relied on by appellant, makes it mandatory upon the legislature to provide suitable compensation for all officers and to define their respective powers. Certainly this is not done in section 12, *supra*. It would seem that an act of the legislature creating public officers must either itself define the powers of the officers and provide suitable compensation, or must in terms delegate to some subordinate body, as for instance, the authorities of a municipality, the duty to define the powers and provide for the compensation, and that an act that fails to do either of these things would be invalid. Here the act does not define the powers of the secretary or the treasurer, nor does it provide for their compensation; neither does it provide that the board of trustees should define said powers and provide said compensation. We see no reason why this section 103 of the Contitution is not fatal to appellant's case upon the theory that section 12, *supra*, was providing for public officer by avoiding the entire provision as to the secretary and treasurer. But if these positions are regarded as mere employments by the board of trustees, and not as public officers, such result would not follow, and the provision would be upheld.

We say that the board clearly did not intend to elect under section 12 for, first, they elected one man to hold two offices, while the statute plainly provided for two men to hold two offices, which offices were not compatible under the common law because the secretary would necessarily be the officer who would audit the accounts of the treasurer, producing an incompatibility, since the holding of two such offices by the same person would have a tendency to put a premium upon fraud and speculation. 29 Cyc., page 1381, subsection c., text and notes and, second, they did not elect a sec-

retary and treasurer as required by the section 12, but an employee whom they styled "secretary and business manager," thereby showing that they were not electing under the injunction of section 12.

Mr. McClure was in terms elected in 1916 as secretary and business manager. This was not an office provided for by section 12, *supra*. If Mr. McClure was anything after this election he was secretary and business manager, but he could not be secretary because the board had already elected Mr. Lawrence to that position, as shown by the minutes, and he was not elected treasurer in terms, so that in no sense was his election an election of a secretary and a treasurer under section 12, *supra;* therefore, supposing section 12 was still in force, Mr. McClure's election is not a satisfaction, of it and he cannot predicate any rights upon it. It may be that the board ought to have elected Mr. McClure treasurer but that is a matter that does not concern this case; they did not elect him treasurer and they did elect him to a position which they themselves created under their general powers which leaves Mr. McClure in the attitude of a mere employee and not of a public officer; for certain it is that a corporation like this board of trustees cannot create of its own violation public officers of this state. A public officer must be created either by some constitutional provision, or some act of the legislature, or some municipal ordinance that is by the law-making powers of the state; it surely cannot be created by such a corporation as the board of trustees of these education institutions. The very case cited by counsel for appellant and upon which they rely here, *Monette* v. *State,* 91 Miss. 670, lays down this principle when in the passage quoted in the brief for appellant, it is said: "The section of the constitution referred to above comtemplates all persons who have any duty to perform concorning the public under any law of this state, whether it be under an act of the legislature, the

constitution of the state, or a municipal ordinance. In the Monette case the office was created by a municipal ordinance.

We think counsel can find no case in which the imcumbent of a position not created by the constitution, act of the legislature or municipal ordinance was held to be a constitutional officier; on the other hand where an officer was created by the constitution, some act of the legislature municipal ordinance, and public duties enjoined upon the incumbent, we have a public officer as in the cases of: *Runnels* v. *State,* Walker, page 146 (Probate Clerk, tenue of office protected by the then constitution) ; *State* v. *Smedes & Marshall,* 26 Miss. 47 (Supreme Court Reporter, held an office under an act of the legislature fixing terms and defining duties) ; *Fant* v. *Gibbs,* 54 Miss. 397 (District Attorney, constitutional officer with term fixed) : *Kelly* v. *State,* 79 Miss. 173 (Assessor and tax collector a public officer as used in section 3540, Code of 1892) ; *State* v. *Armstrong,* 91 Miss. 513 (Mayor, provided for by legislative Act, a public officer) ; *Ex Parte Brown,* 112 Miss. 236 (Court Stenographer provided for by law, holding term of four years by statute, court cannot arbitrarily remove) ; *Board of Health* v. *Matthews,* 113 Miss. 519 (County Health Officer, term of office and duties provided by Code 1906, section 2491, 2494, public officer removable only under section 175 Constitution) ; *Lizano* v. *Pass Christian,* 96 Miss. 640 (City Marshall, provided for by sections 3375, 3394 and 3435, Code 1906, protected by section 175 of Constitution) ; *Yerger* v. *State,* 91 Miss. 803 (Clerk of Penitentiary, office provided for, compensation and duties provided for by the legislature, section 3598, Code 1906. Constitutional question not raised but held removal by board could only be accomplished in the method provided for in the statute) ; *McDowell* v. *State,* 111 Miss, 596 (State Factory Inspector office created and duties prescribed by Chapter 163, Laws 1914, held a

public office and removal only in manner pointed out in the law creating the office. Constitutional question not raised); *Ware* v. *Smith,* 111 Miss. 599 (County Health Officer constitutional question not raised, as it was in *Board of Health* v. *Matthews, ubi supra*). From the foregoing cases it would appear that the persons who are treated as public officers whose tenures of office would be. protected by section 175 of the constitution, are those provided for by laws, either constitutional, legislative or municipal, with public duties to perform as provided for in those laws.

In the present case ''secretary and business manager'' was not an office provided for by law, either constitutional, statutory or municipal; its duties were not prescribed by any of those law-making bodies; it is not protected against sudden termination by any regulation of the legislature providing for charges and a hearing before the incumbent can be discharged by the board. What is it then? Nothing but an employment under the board of trustees, considered as convenient or necessary in performing the duties of its being—with the whole subject-matter of the employment, its terms, its duties and its termination left entirely in the discretion of the board.

The questions involved here are strictly legal, and give no proper scope for consideration of politics, expediency or what the court might think an equity. If Mr. McClure was not a public officer he is not entitled to the writ of *quo warranto.* He unquestionably knew when he accepted the job of secretary and business manager in 1916 that the board of trustees then had on its minutes a resolution reserving the right in all cases to discharge at any time it pleaded without the preference of formal charges. He took the job under those conditions; he had already held it for a number of years, and held it for two years longer when, in the change of personnel of the board, he was dismissed and another

man elected. He was not satisfied and now invokes the extraordinary remedy of *quo warranto* for the purpose of still holding on after his present board or after they had decided to make a change for some reason. We submit that he cannot succeed in this attempt.

The board had full power to discharge Mr. McClure and employ some one else in his place. He had been elected by the board to position created by itself, and not by any constitutional, statutory or municipal law. The board had power to establish this position, under the general powers conferred upon it to run the institution; there were no qualifications or restrictions whatever imposed upon them, or their action with reference to this position, either by statute, constitutional law, or otherwise. They were the electing power, and with this power, unrestricted as it was, they had the power of removal when they pleased. Under such conditions the principles become applicable that are laid down in 29 Cyc., page 1498e.

Where it is said that in case the power is arbitrary and it is arbitrary when incident to the power of appointment, discharge may be made without charges preferred and proved. See also on this point, section 4 of syllabus of *Newsom* v. *Cocke et al.,* 44 Miss. 352. Especially note the language of the court on middle of page 359 of the report where it is said: "This was a full recognition of the principle that the power of removal was incident to the power of appointment in such case." This was a recognition by this court that the principle is sound and is the law of Mississippi. Upon the whole case we respectfully urge that the judgment of the lower court was free from error and that this case should be affirmed.

ETHRIDGE, J., delivered the opinion of the court.

The appellants brought a proceeding in *quo warranto* to recover possession of an alleged office as secretary

and treasurer of the Alcorn Agricultural and Mechanical College, alleging that he is the duly elected secretary and treasurer for a term of four years beginning on the 1st day of July, 1916, and further alleged that on the 25th day of September, 1918, the defendant took possession of said office and had been in the possession of said office and the discharge of his duties up to the time of the filing of the petition, and that his holding and executing the functions of said office is without any authority of law, and that petitioner is entitled to the possession of said office and the emoluments thereof; wherefore he brings suit and prays the judgment of the court to place him in possession of said office. The exhibits to the declaration show various orders of the board of trustees of the state educational institutions, among which is an order electing appellant secretary and treasurer and business manager of the Alcorn Agricultural and Mechnical College in July, 1916, for a term of four years, and also an order from the board of trustees of said institutions on the 25th day of September, 1918, rescinding the order electing McClure for four years and declaring the posititon vacant, and an order electing the defendant to said position. The petition was demurred to and the demurrer sustained and the petition dismissed, from which judgment this appeal is prosecuted.

Section 12, Code of 1906, is relied on as creating the office, and reads as follows:

"12. Trustees.—The government of said college shall be in a board of twelve trustees, a majority of whom shall be practical agriculturists, mechanics and manufactures, one to be appointed from each congressional district, and four from the state at large. They shall be appointed by the Governor of the state, by and with the advice and consent of the senate, and shall continue in office for six years, and until successors are appointed; and the trusees shall be ineligible to suc-

ceed themselves more than once. They shall elect a secretary and treasurer, but these shall not be members of the board of trustees. In the absence of the president, they shall elect a president *pro tempore.* The duration of the term of officers of the board of trustees shall be fixed by the board.''

At the session of 1910 the legislature enacted chapter 114, Laws of 1910, which provides that there shall be one board of trustees, who shall have the sole supervision and control of the following colleges supported and maintained by the state, naming among others the Alcorn Agricultural and Mechanical College located at Rodney, Miss., and provides in section 5 that the board of trustees shall have all the power and authority now granted to and vested in the several boards of trustees under and by virtue of chapters 3, 4, 67, and 146 of the Code of 1906, which included the chapter governing the Alcorn Agricultural and Mechanical College. Section 2 of this act was amended by chapter 170 of the Laws of 1912 in reference to the appointment and terms of trustees, and section 2 thereof provides:

''The board shall have authority to appoint one of their members as secretary of said board, who shall be a competent accountant and whose duty it shall be to check up personally all the affairs and finances of each of the institutions at least twice a year, and for his services he may be paid a reasonable compensation, to be fixed by the board of trustees.''

It will be noted from section 12, Code of 1906, above set out, that the trustees shall elect a secretary and treasurer; but these shall not be members of the board of trustees, and it is upon this clause of the statute that the right of the appellant is predicated. .It is insisted that the secretary and treasurer so provided for is a public officer of the state within the meaning of section 175 of the state Constitution, and that the said officer could not be removed except in the manner provided for

in section 175 of the state Constitution, which has been construed to be the exclusive method of removing a public officer, and the appellant relies upon the following cases decided by this court as governing the controversy in question: *Monette* v. *State,* 91 Miss. 670, 44 So. 989, 124 Am. St. Rep. 715; *Shelby* v. *Alcorn,* 36 Miss. 273, 72 Am .Dec. 169; *Kierskey* v. *Kelly,* 80 Miss. 803, 31 So. 901; *Yeager* v. *State,* 91 Miss. 815, 45 So. 849; *Ware* v. *State ex rel. Poole,* 111 Miss. 599, 71 So. 868; *State* v. *McDowell,* 111 Miss. 596, 71 So. 867; *Miss State Board of Health* v. *Mathews,* 113 Miss. 517, 74 So. 417; *Lizano* v. *Pass Christian,* 96 Miss. 640, 50 So. 981.

In *Shelby* v. *Alcorn,* 36 Miss. at pages 288 and 289 of the Official Report, Book 18 of the Reprint, p. 115, 72 Am. Dec. 69, this court defined a "public office" as follows:

"1.   The term 'office' has no legal or technical meaning attached to it, distinct from its ordinary acceptations. An office is a public charge or employment; but, as every employment is not an office, it is sometimes difficult to distinguish between employments which are, and those which are not offices. It is generally, if not universally, true that a duty or employment arising out of a contract, and dependent for its duration and extent upon the terms of such contract is never considered an office. An 'officer,' as defined by Blackstone, is a right to exercise a public or private employment, and to take the fees and emoluments thereunto belonging, whether public, as those of magistrates, or private, as bailiffs, receivers, and the like. 2.   Blacks Com. 36. And it is laid down 'that a public officer is one who has some duty to perform concerning the public; and he is not the less a public officer when his duty is confined to narrow limits, because it is the duty, and the nature of that duty, which makes him a public officer, and not the extent of his authority.' 7 Bac. Ab. 280; Garthew, 479.   And we apprehend that it may be stated as uni-

versally true that where an employment or duty is a continuing one, which is defined by rules prescribed by law and not by contract, such a charge or employment is an office, and the person who performs it is an officer.''

It will be noted from the above quotation that the employment or duty is a continuing one prescribed by law and not by contract. In all of the cases relied upon by the appellant, the duties of the officer were prescribed by law, and also the terms of their offices were prescribed by law. The essential distinction between an employment and an office is that in an office the duties and powers are prescribed by law, while in a contract the duties and powers are either prescribed by contract or prescribed by some person having power and authority to direct the employee as to the services such employee shall perform. The part of the above quotation from *Shelby* v. *Alcorn, supra,* ''that a public officer is one who has some duty to perform concerning the public,'' is relied on strongly here as applying to the present case and making the appellant a public officer because his duties, it is claimed, as secretary and treasurer, are with reference to the public.

If this alone constituted a person a public officer, every bookkeeper, teacher, servant, or employee in a public institution would be a public officer, who under the Constitution would have to have a fixed term and who could only be discharged by indictment and conviction though such person had no duties prescribed in the statute.

We do not believe that it was ever contemplated that section 175 was so far-reaching. The Yerger Case, supra, contains language that makes the argument of the appellant seems to be supported by that case; but, when the statutes bearing on the position which Yerger was filling are read in connection with the opinion, it will be seen that his duties were prescribed by law, and he was required to execute a bond and take oath of office,

and his term of office was specifically fixed by statute at one year.

In the *Ware Case, Supra,* it was pointed out that the duties of the county health officer were prescribed by law. In *State v. McDowell,* 111 Miss. 596, 71 So. 867, it was pointed out that the statute creating the office fixed the duties and salary, but did not fix the term of office; but it was held that the term of office was fixed by another statute, that, in the absence of the term being fixed by a special satute, it was fixed by section 3456 of the Code of 1906, which provides that:—"The term of office of all officers, not otherwise provided for by law, shall be four years and until their successors shall be duly qualified."

Inasmuch as the statute does not prescribe either the duties to be performed by the secretary and treasurer, or for a specific term or for any specific compensation, and inasmuch as a private person can be a secretary or treasurer, the statute does not make these positions public offices.

It will be noted from reading the sections of law above set out that the government and control of the colleges is vested in the board of trustees, and that the board of trustees shall have the power necessary for the execution of the trust reposed in it. Neither the Code of 1906 nor the Laws of 1910 prescribe any duties or powers to be exercised by the secretary or treasurer. Chapter 170 of the Laws of 1912 prescribe the duties of the secretary of the general board created for all the state colleges, and that position is distinct from the secretaryship or the treasurer of the Alcorn Agricultural and Mechanical College provided for in section 12 of the Code of 1906, and if the Act of 1910 and the Act of 1912 did not repeal the provisions in section 12 of the Code for a secretary and treasurer of the Alcorn Agricultural and Mechanical College (which we do not now decide), and if section 2 be left as written in the Code,

and conceding for the purpose of this opinion that the board of trustees of said educational institutions shall select a secretary and treasurer for the Alcorn Agricultural and Mechnical College separate and apart from the secretary of the board of trustees provided for in chapter 170 of the Laws of 1912, still such secretary and treasurer would be a mere' employee of the board of trustees whose duties and compensation would have to be fixed by the board of trustees and not by law.

It follows that the appellant was not a public officer, and consequently the petition for *quo warranto* stated no cause of action sufficient to sustain such proceeding, and the demurrer was rightfully sustained; and the judgment of the court below is, accordingly, affirmed.

*Affirmed.*